Sarah DENMON, Appellant

v.

ATLAS LEASING, L.L.C., Atlas Mortgage Company, A–Advantage Company, Atlas Financial Mortgage, Inc., and James Warner, Appellees.

No. 05–08–00429–CV.

Court of Appeals of Texas, Dallas.

May 21, 2009.

Donald C. McLeaish, Duncanville, John B. Rizo, Sr., Law Office of John B. Rizo, Sr., Dallas, for Appellant.

Carl Ginsberg, Dallas, for Appellee.

Before Justices WRIGHT, BRIDGES, and O'NEILL.

## OPINION

Opinion by Justice O'NEILL.

Appellant Sarah Denmon brought suit against appellees for wrongful foreclosure

of her residence in violation of her homestead rights and for allegedly committing fraud. After a bench trial, the trial court signed a take nothing judgment in favor of appellees and signed findings of fact and conclusions of law. In two issues, appellant asserts (1) the lien on her home was void; therefore, the resulting foreclosure and eviction were wrongful; and (2) appellees defrauded her. We reverse and render in part and affirm in part the trial court's judgment.

## Background

On June 30, 2003, Sarah Denmon and Carnell Denmon sold their home on Forest Green Drive in Dallas, Texas. After the sale of the home, Carnell gave his half of the sale proceeds to Sarah to put down on the Shennandoah property in Desoto, which is the property subject to this suit. Sarah bought the Shennandoah property in her name in July of 2003. She stated she was hoping to retire in the home, have a place for her son to live when he came home from college, and have a place for any future grandchildren.

Although both spouses stated Carnell visited the Shennandoah property on several occasions, he bought a trailer home in his sole name in Giddings, Texas in July 2003. He did not, however, file a homestead exemption for his property until after he and Sarah divorced in 2004.

In November 2003, Sarah inquired into receiving a $10,000 loan for some home repair projects and to help her son with college. Jerri Winslow with Atlas Mortgage Company worked out the details of the loan with Sarah, which included A–Advantage Company performing certain home repairs. On November 23, 2003 Sarah executed the documents, which included a mechanic's lien, a promissory note, and a deed of trust for the Shennandoah property.

Despite testimony that Sarah and Carnell had been separated since 2001, the undisputed evidence shows they were married until late 2004. Thus, when Sarah signed the loan documents, she and Carnell were still married. Sarah testified she told Jerri Winslow prior to signing the loan documents that she was in fact married. The owner of Atlas, who testified at trial, stated he was never informed she was married. When appellees conducted a property search on the Shennandoah property, it was listed only in Sarah's name and no homestead exemption was on file. Further, Carnell's name never appeared in the chain of title.

Sarah received the loan and was required to make monthly payments of $376.58. She made payments in December of 2003 and January of 2004. She made a final $500 payment in March of 2004. After she defaulted on the loan, appellee did not immediately proceed with foreclosure proceedings because they wanted to give her the opportunity to refinance. However, they later foreclosed on October 7, 2004, and the Shennandoah property was sold for $35,100 to the Shennandoah Trust. Sarah refused to vacate her home, and the Trust eventually sold the property back to Atlas. The house was then foreclosed a second time, and she was forced out of the home.

She filed suit in December 2005 arguing fraud and wrongful foreclosure of her homestead. The trial court heard the case and ruled against Sarah in a take nothing judgment. This appeal followed.

## Standard of Review

Appellant does not present a standard of review in her brief; however, we interpret her arguments as challenges to the legal and factual sufficiency of the trial court's findings of fact and conclusions of law.

Atlas, likewise interprets her arguments as such.

In reviewing a trial court's findings of fact for legal and factual sufficiency of the evidence, we apply the same standards we apply in reviewing the evidence supporting a jury's answer. *Ramsey v. Davis*, 261 S.W.3d 811, 815 (Tex.App.-Dallas 2008, pet. denied). When the appellate record contains a reporter's record as it does in this case, findings of fact are not conclusive on appeal if the contrary is established as a matter of law or if there is no evidence to support the findings. *Id.*

When a party attacks the legal sufficiency of an adverse finding on an issue on which she has the burden of proof, she must show the evidence establishes, as a matter of law, all vital facts in support of her desired finding. *Id.; see also Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex.2001). In a legal sufficiency review, we consider the evidence in the light most favorable to the finding and indulge every reasonable inference that would support that finding. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex.2005). When the party also complains about the factual sufficiency of the evidence, it must show the adverse finding is so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Cenveo Corp. v. Dallas Cent. Appraisal Dist.*, 260 S.W.3d 713, 715 (Tex.App.-Dallas 2008, no pet.).

We review a trial court's conclusions of law de novo to determine whether the trial court drew the correct legal conclusions from the facts. *State v. Heal*, 917 S.W.2d 6, 9 (Tex.1996); *Landerman v. State Bar of Texas*, 247 S.W.3d 426, 431 (Tex.App.-Dallas 2008, pet. denied). We are not bound by the trial court's conclusions of law and will review them independently to determine their legal correctness. *Landerman*, 247 S.W.3d at 431.

## Lien and Foreclosure

■ Sarah presents her first issue as whether the trial court erred by failing to find that an invalid lien had been placed on her home and therefore a wrongful foreclosure took place. She specifically relies on section 53.254 of the property code, which requires the signature of both spouses when fixing a lien on a homestead. *See* Tex. Prop. Code Ann. § 53.254(c) (Vernon 2007). We interpret her argument as challenging conclusions of law numbers 22 and 23 in which the trial court concluded the following:

22. Plaintiff had the ability to and did place a valid lien on the property located at 508 Shennandoah, Desoto, Texas.

23. The lien placed on the property at 508 Shennandoah by Plaintiff does not violate the homestead protections of the Texas Constitution.

As stated above, it is undisputed Sarah and Carnell were married at the time Sarah signed the loan documents, including the mechanic's lien, in November of 2003. Likewise, the trial court specifically found "Plaintiff was married to Carnell Denmon at the time she acquired the property located at 508 Shennandoah, Desota, Texas," and "the Plaintiff was divorced from Carnell Denmon on June 14, 2004." Despite evidence of the two being separated since 2001, there is no evidence in the record to contradict their marriage or these findings as a matter of law.

■ The language of section 53.254 is clear. To fix a lien on a homestead, the person who is to furnish material or perform labor and the owner must execute a written contract setting forth the terms of the agreement. Tex. Prop. Code Ann. § 53.254(a). If the owner is married, the contract must be signed by both spouses.

*Id.* § 53.254(c). Because it is undisputed they were married, section 53.254 applies if the Shennandoah property was in fact their family homestead. We will now discuss this issue.

■■■ The State of Texas famously recognizes one of the broadest homestead exemptions in the United States. *Cadle Co. v. Ortiz,* 227 S.W.3d 831, 835 (Tex.App.-Corpus Christi 2007, pet. denied). Homestead rights have traditionally enjoyed great protection, and statutes that affect such rights are liberally construed to protect the homestead. *Id.; see also Florey v. Estate of McConnell,* 212 S.W.3d 439, 443 (Tex.App.-Austin 2006, pet. denied). The burden of proving homestead is on the party claiming such a homestead. *Burk Royalty Co. v. Riley,* 475 S.W.2d 566, 568 (Tex.1972). To sustain a homestead claim, there must be proof of overt acts of homestead usage and intent on the part of the owner to claim the land as homestead. *Stewart v. Clark,* 677 S.W.2d 246, 250 (Tex. App.-Corpus Christi 1984, no writ). Nevertheless, exceptions to the homestead exemption do exist. Among them, the Texas Constitution provides that a marital homestead is "protected from forced sale for the payment of all debts except for ... work and material used in constructing new improvements thereon if ... the work and material are contracted for in writing, with the consent of both spouses." TEX. CONST. art. XVI, § 50(a)(5)(A).

■■ Texas law recognizes that homestead protection can dissolve if the owners deliberately misrepresent their marital status in order "to defeat the rights of an innocent third party who, in good faith, without notice, for valuable consideration, has acquired valid liens." *Cadle Co.,* 227 S.W.3d at 835. Such an assertion is an affirmative defense upon which appellees would have the burden of proof, had they pleaded the defense. *Id.* However, appel-

lees never affirmatively asserted that Sarah misrepresented herself in order to defeat their rights. In fact, Sarah claimed at trial she told Jerri Winslow she was married; however, Atlas's owner stated at trial that information, if true, was never relayed to him. Rather, appellees simply relied on their document review showing Sarah owned the Shennandoah property solely in her name, Carnell's name never appeared anywhere in the chain of title, and she did not file a homestead exemption on her property.

■■ However, it is not necessary for a spouse to be listed on real property documents in order for homestead status to attach. *Id.* at 836. Texas law is clear that possession of a homestead interest is not dependent upon ownership; a person is permitted to hold homestead rights in his or her spouse's separate property. *Id.; see also* TEX. FAM. CODE ANN. § 5.001 (Vernon 2006). Likewise, it has been held that no specific writing is needed to claim a homestead; therefore, the fact that Sarah did not file a homestead exemption is not proof that she did not intend it as such. *See Dodd v. Harper,* 670 S.W.2d 646, 649 (Tex.App.-Houston [1st Dist.] 1983, no writ). To assert that the homestead protection of the Texas Constitution could be voided by mere failure to designate the property as a homestead for tax purposes would render the constitutional protection meaningless. *Id.*

■■ Also, once a property has been dedicated as a homestead, it can only lose such designation by abandonment, alienation, or death. *Ramsey,* 261 S.W.3d at 817. Here, it is undisputed the Shennandoah property was Sarah's homestead, despite her failure to file an exemption. She specifically testified of her homestead intentions when buying the home and further stated she thought she had filed an

exemption. By reaching the conclusions that Sarah had the ability to place a valid lien on the home and the lien was not in violation of the homestead protections of the Texas Constitution, the trial court essentially determined that either (1) the property was her single person homestead, or (2) despite being married, the property was not Carnell's homestead. As explained below, we conclude neither conclusion can be correct; therefore, the lien on the property is void.

■ First, it is undisputed Sarah was married at the time she entered into the transaction. As such, she could not qualify for a homestead exemption as a single person. *See, e.g., Tremaine v. Showalter,* 613 S.W.2d 35, 37 (Tex.Civ.App.-Corpus Christi 1981, no writ) (noting married man living with another woman, not his wife, could not claim homestead as single adult person because he was not single). Further, a person cannot have two homesteads at the same time. *Ramsey,* 261 S.W.3d at 817. Here, the community money from the sale of Sarah and Carnell's homestead on June 30, 2003 was applied for a down payment on the Shennandoah property, which became the family homestead. Although the evidence shows Carnell never resided in the Shennandoah property, he visited several times during 2003.

■ We acknowledge the trial court's finding that he purchased a trailer home in Giddings, Texas shortly after the sale of the first homestead and another woman, not his wife, sometimes stayed there. However, the trailer home could not be his single adult or family homestead. Carnell was not single and therefore could not claim his trailer as a single adult homestead. *Tremaine,* 613 S.W.2d at 37. Further, the claim of a family homestead is not maintainable by a man and woman living together in an unmarried state. *Id.*

Also, the evidence shows Carnell did not file for a homestead exemption for his trailer home until 2004, after his divorce was finalized. Although we believe perhaps an argument could have been made on these facts that Carnell abandoned the Shennandoah homestead, abandonment is an affirmative defense. *McFarland v. Rousseau,* 667 S.W.2d 929, 931 (Tex.App.-Corpus Christi 1984, no writ). As such, appellees had the burden to plead and prove it, which they did not do. *Id.* (citing *Huffington v. Upchurch,* 532 S.W.2d 576 (Tex.1976)).

Thus, under these facts, we conclude because Sarah and Carnell were married at the time she purchased the Shennandoah property, she intended it to be the family homestead, and appellees never pleaded and proved abandonment, the Shennandoah property was also Carnell's family homestead. Therefore, the trial court erred in concluding the lien did not violate the homestead protection of the Texas Constitution. As the family homestead, Texas Property Code section 53.254 required his signature on the loan documents before a lien could attach that resulted in foreclosure. TEX. PROP. CODE ANN. § 53.254. It is undisputed he did not sign the documents. As such, the lien on the Shennandoah property and the resulting foreclosure is void. *See Cadle Co.,* 227 S.W.3d at 836 (holding lien did not supersede husband's homestead rights even when wife signed loan documents on her own; therefore, foreclosure was wrongful).[1] Thus, the trial court did not reach

---

1. Appellees argue *Arlin Properties, Inc. v. Utz,* 465 S.W.2d 231 (Tex.Civ.App.-Fort Worth 1971, no writ) is controlling. We disagree. In that case, the court determined the wife was not in a position to complain about her husband not signing the deed and the subsequent loss of the homestead because she held herself out as a feme sole. *Id.* at 233. She

the correct legal conclusions under the facts of this case.

■ Appellees argue Sarah does not have standing to challenge that the lien violated provisions of the homestead act because the purpose of requiring both parties to sign the legal documents creating a lien is to protect the non-signing spouse from possible loss of existing homestead rights without his consent. *Stewart v. Clark*, 677 S.W.2d 246, 249 (Tex.App.-Corpus Christi 1984, no writ). Thus, they contend any homestead violation is Carnell's right to assert and not Sarah's right. We disagree. A void instrument has no effect, even as to persons not parties to it, and a contention that a document is void under homestead law may be asserted by anyone whose rights are affected by the instrument. *Florey*, 212 S.W.3d at 444 (concluding an estate had standing to contest the validity of a lien placed on a homestead); *Patterson v. First Nat'l Bank of Lake Jackson*, 921 S.W.2d 240, 247 (Tex. App.-Houston [14th Dist.] 1996, no writ) (concluding wife had standing to assert homestead claim on behalf of ex-husband without his joinder). As such, appellees standing argument is without merit.

We sustain appellant's first issue and reverse the trial court's judgment that Atlas created a valid lien, resulting in foreclosure, against the Shennandoah property. We render judgment in Sarah Denmon's favor on her first issue.

### Fraud

■ In her second issue, Sarah claims appellees defrauded her by inducing her to enter into a sham transaction, to her detriment, upon promises of having work completed on her home, which was never finished. We conclude she has failed to adequately brief her issue.

■ For an issue to be properly before this court, the issue must be supported by argument and authorities and must contain appropriate citations to the record. TEX. R. APP. P. 38.1(h). Bare assertions of error, without argument, authority, or citation to the record waive error. *Sullivan v. Bickel & Brewer*, 943 S.W.2d 477, 486 (Tex.App.-Dallas 1995, writ denied); *see also Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex.1994) (appellate court has discretion to waive point of error due to inadequate briefing).

Here, appellant has provided nothing but statements, without any citations to the record, allegedly supporting her fraud claim. Besides one citation to section 12.002 of the Texas Civil Practice and Remedies Code, she has not provided any other legal authority in support of her fraud claim. Therefore, appellant has failed to present her argument for review. Accordingly, we will not consider this complaint. We overrule appellant's second issue.

### Request for Damages

■ Although not presented as a separate issue, Sarah argues she is entitled to return of her home and for damages compensating the loss of her furniture, other furnishings, and damages resulting from emotional and physical distress such as

---

signed the documents with her maiden name despite still being married. Here, there is no evidence Sarah held herself out as a single woman. Further, in *Arlin*, although the spouses were not divorced at the time of the transaction, their divorce was finalized eight days later, indicating the divorce had been pending before the transaction. Here, although Sarah and Carnell were indeed separated at the time of the transaction, neither had officially filed for divorce. Thus, we conclude *Arlin* is factually distinguishable and not controlling.

sleeplessness, anxiety, and a worsening back condition.

By concluding the lien on her home is void, Sarah is entitled to the return of the Shennandoah property. However, she is not entitled to any further damages. After reviewing the record and the trial court's findings of fact on the damages issues, we conclude the evidence is both legally and factually sufficient to support these findings. Appellant had previous unrelated physical injuries for which she was receiving disability payments. She provided no evidence that Atlas's conduct caused her any further emotional or physical damages. Also, she did not provide any evidence establishing the value of the personal property she allegedly lost in the foreclosure. Thus, the trial court properly denied awarding her any further damages.

## Conclusion

Having sustained appellant's first issue, we reverse and render the trial court's judgment as to the lien and foreclosure on the Shennandoah property. We affirm the trial court's judgment in all other respects.