**CITY OF CORPUS CHRISTI, et al., Appellants,**

v.

**FIVE CITIZENS OF CORPUS CHRISTI, Appellees.**

No. 13–02–00062–CV.

Court of Appeals of Texas, Corpus Christi–Edinburg.

April 17, 2003.

Rehearing Overruled May 22, 2003.

Andrew L. Quittner, Asst. City Atty., James R. Bray, Jr., City Atty., Jorge C. Rangel, Rangel Law Firm, William Maxwell, Corpus Christi, for appellants.

H.C. "Tony" Heldenfels, Jr., Ryan E. Stevens, Corpus Christi, for appellees.

Before Justices HINOJOSA, CASTILLO, and CHAVEZ.[1]

### OPINION

Opinion by Justice HINOJOSA.

Appellants, City of Corpus Christi, City Manager David Garcia, and the Disbursing Officer of the City of Corpus Christi, ap-

---

1. Retired Justice Melchor Chavez, assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T CODE ANN. § 74.003 (Vernon 1998).

peal from the trial court's judgment enjoining them from ·violating the express terms of article IV, section 3 of the charter of the City of Corpus Christi. In seven issues, appellants contend the trial court erred: (1) by denying their plea to the jurisdiction; (2) by rendering a judgment prohibiting temporary loans from the City's "Combined Utility Fund" to the City's "General Fund"; (3) by signing an injunction order that is impermissibly vague; (4) by failing to file findings of fact and conclusions of law; and (5) by awarding attorney's fees. We reverse and render.

### A. Background

The material facts of this case are undisputed. Article IV, section 3 of the charter of the City of Corpus Christi provides:

> Upon written recommendation of the city manager, the city council may at any time transfer the unencumbered balance of an appropriation made for the use of one department, division or purpose, to any other department, division or purpose; *provided, however, no such transfer shall be made of revenues or earnings of any municipally-owned utility, such as the water, gas or sewerage department, to any other department or to any other purpose, with the exception of any utility required debt service.*

(Emphasis added). In an effort to obtain lower utility rates, the city charter was amended in 1984, by citizen petition. The amendment added the above-italicized language.

The City Council of the City of Corpus Christi adopted ordinances authorizing loans from the Combined Utility System Fund to other departments of the city.

Appellees, Five Citizens of Corpus Christi,[2] filed suit, contending that the ordinances violated the city charter. After a bench trial, the trial court rendered judgment in favor of appellees. The trial court permanently enjoined appellants "from violating the express terms of the charter of City of Corpus Christi, Article IV, Section 3, Interdepartmental Transfer of Funds." The court also conditionally awarded appellees their attorney's fees in the amount of $10,000.00, should they prevail on appeal.

### B. Standard of Review

▉▉▉ The standard of review when a trial court grants or denies a permanent injunction is limited to whether the trial court clearly abused its discretion. *Adust Video v. Nueces County,* 996 S.W.2d 245, 252 (Tex.App.-Corpus Christi 1999, no pet.). The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985). A reviewing court cannot conclude that a trial court abused its discretion simply because, in the same circumstances, it would have ruled differently, or because the trial court committed a mere error in judgment. *E.I. du Pont de Nemours & Co. v. Robinson,* 923 S.W.2d 549, 558 (Tex.1995); *Loftin v. Martin,* 776 S.W.2d 145, 146 (Tex.1989). By applying the abuse-of-discretion standard, the reviewing court defers to the trial court's factual determinations while properly fulfilling its role to determine questions of law de novo. *See Walker v. Packer,* 827 S.W.2d 833, 839–40 (Tex.1992) (orig.proceeding) (describing appellate review of trial court's legal determinations as

---

**2.** The Five Citizens of Corpus Christi are J.E. O'Brien, Jack Gordy, Raymond F. Hasker, Albin Kucera, and Peter K. Miller.

less deferential than review of factual determinations).

### C. ANALYSIS

The City of Corpus Christi is a home rule city which derives its power, not from the legislature, but from article XI, section 5 of the Texas Constitution. Article XI, section 5 provides, in relevant part:

> Cities having more than five thousand (5,000) inhabitants may, by a majority vote of the qualified voters of said city, at an election held for that purpose, adopt or amend their charters.... The adoption or amendment of charters is subject to such limitations as may be prescribed by the Legislature, and no charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State.

TEX. CONST. art. XI, § 5.

 Home rule cities have the "full power of self-government," and as a result, home rule cities must "look to the acts of the legislature not for grants of power to such cities, but only for limitations on their powers." *Proctor v. Andrews*, 972 S.W.2d 729, 733 (Tex.1998) (citing *Lower Colo. River Auth. v. City of San Marcos*, 523 S.W.2d 641, 643 (Tex.1975)). While a home rule city thus has all the powers of the state not inconsistent with the Texas Constitution, the general laws, or the city's charter, these broad powers may be limited by statute when the legislature's intention to do so appears "with unmistakable clarity." *Proctor*, 972 S.W.2d at 733; *see Lower Colo. River Auth.*, 523 S.W.2d at 645; *see also City of Sweetwater v. Geron*, 380 S.W.2d 550, 552 (Tex.1964).

In their third and fourth issues, appellants contend the trial court erred in determining that interest-bearing loans from the City's utility fund to the City's general fund violate article IV, section 3 of the city charter. Appellants assert that the trial court's interpretation brings the charter provision in direct conflict with the Texas Government Code, thereby violating article XI, section 5 of the Texas Constitution.

In 1999, the legislature enacted Title 9 of the Texas Government Code. In that enactment, prior article 1113a of the revised civil statutes became section 1502.061 of the government code. Section 1502.061 then provided:

> **Sec. 1502.061. Transfer of Revenue to General Fund.**
>
> Notwithstanding Section 1502.060(a) or similar law, a municipality and its officers and utility trustees may transfer to the municipality's general fund and may use for general or special purposes revenue of any municipally owned utility system in the amount and to the extent authorized in the indenture, deed of trust, or ordinance providing for and securing payment of revenue bonds issued under this subchapter or similar law.

Act of May 10, 1999, 76th Leg., R.S., ch. 227, § 1, 1999 Tex. Gen. Laws 898. The 76th legislature subsequently amended this statute. Act of May 18, 1999, 76th Leg., R.S., ch. 1064, § 22, 1999 Tex. Gen. Laws 3907. The amendment renumbered section "1502.060" to "1502.058" and renumbered section "1502.061" to "1502.059". *Id.* The amendment also changed "notwithstanding Section 1502.060(a) or similar law" to "notwithstanding Section 1502.058(a) or a similar law or municipal charter provision". *Id.* The amendment became effective September 1, 1999. *Id.* Since then, section 1502.059 has provided:

> **Sec. 1502.059. Transfer of Revenue to General Fund.**
>
> Notwithstanding Section 1502.058(a) or a similar law or municipal charter provi-

sion, a municipality and its officers and utility trustees may transfer to the municipality's general fund and may use for general or special purposes revenue of any municipally owned utility system in the amount and to the extent authorized in the indenture, deed of trust, or ordinance providing for and securing payment of public securities issued under this chapter or similar law.

TEX. GOV'T.CODE ANN. § 1502.059 (Vernon 2000).

 When a legislature enacts a statute in conflict with a prior city ordinance or charter, the latter is rendered ineffective. *See City of Baytown v. Angel,* 469 S.W.2d 923, 925 (Tex.Civ.App.-Houston [14th Dist.] 1971, writ ref'd n.r.e.); *City of Fort Worth v. Fire Dep't of City of Fort Worth,* 213 S.W.2d 347, 350 (Tex.Civ.App.-Fort Worth 1948), *aff'd in part, rev'd in part on other grounds,* 147 Tex. 505, 217 S.W.2d 664 (1949); *Dry v. Davidson,* 115 S.W.2d 689, 691 (Tex.Civ.App.-Galveston 1938, writ ref'd).

Section 1502.059 of the government code clearly provides that a city may transfer funds from a municipally owned utility system to the city's general fund, in spite of any municipal charter provision to the contrary. Thus, the City's 1984 charter amendment, prohibiting the transfer of funds from any municipally owned utility to any other department, is inconsistent with section 1502.059. Regardless of the purpose of the City's charter provision, we conclude that the language of section 1502.059 authorizes such transfers with unmistakable clarity.

Because the City's charter provision is clearly inconsistent with section 1502.059 of the Texas Government Code, we hold it violates article XI, section 5 of the Texas Constitution. Accordingly, we hold that the following portion of article IV, section 3 of the charter of the City of Corpus Christi is unconstitutional:

> provided, however, no such transfer shall be made of revenues or earnings of any municipally-owned utility, such as the water, gas or sewerage department, to any other department or to any other purpose, with the exception of any utility required debt service.

Appellants' third and fourth issues are sustained. In light of our disposition of these issues, it is not necessary that we address appellants' remaining issues. TEX. R.APP. P. 47.1.

We reverse the trial court's judgment and render judgment that appellees take nothing by their suit.